WICKHAM AND NORTHROP, RECEIVERS, V. TURPIN.

March 9, 1911.

Absent, Harrison, J.

1. WITNESSES—*Impeachment—Prior Inconsistent Statements—Foundation—Questions to Impeaching Witness.*—If it is sought to contradict a witness by proof of prior inconsistent statements, foundation therefor must first be laid by calling his attention to the alleged statements and to the circumstances under which they are alleged to have been made with such certainty as will enable him to identify the occasion referred to. After the foundation has been laid, it is the better practice to require of the impeaching witness categorical answers as to whether or not the witness made such statements, since the matter at issue is whether the witness, whose testimony is assailed, did or did not utter the statements attributed to him, but no inflexible rule can be laid down on the subject for the guidance of trial courts. In the nature of things more or less latitude must be allowed them. It is sufficient if the questions to the impeaching witness are within the warning questions propounded to the witness sought to be impeached.

2. TRIAL—*Improper Remarks of Counsel—Time of Objection.*—Objection on account of improper remarks made by counsel in his address to the jury should be made at the time, and the court be requested to instruct the jury to disregard them. Such objections come too late after verdict.

Error to a judgment of the Circuit Court of Chesterfield county in an action of trespass on the case. Judgment for the plaintiff. Defendants assign error.

*Affirmed.*

The opinion states the case.

*A. B. Guigon, H. W. Anderson,* and *Mann & Mann,* for the plaintiffs in error.

*Smith, Moncure & Gordon,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

The judgment under review was rendered in behalf of J. A. Turpin against Wickham and Northrop, receivers, in an action of trespass on the case for personal injuries. There are only two assignments of error, and these we will consider in the order in which they are stated in the petition for a writ of error.

The first assignment of error makes objection to the course of examination of an impeaching witness. On cross-examination, the defendants' witness, Mann, was asked if he had not had a conversation with Parish (time and place being given) in which he had told the latter that he saw the plaintiff wave to the motorman (in charge of the defendants' electric car) and call to him to stop; and that he (witness) also told him to stop; but that he did not stop, and the collision occurred, and was absolutely the motorman's fault. The witness admitted having had a conversation with Parish concerning the accident, but denied telling him what the question imported. Thereupon Parish was introduced in rebuttal to impeach the testimony of Mann. The witness was proceeding to give his version of the conversation, when counsel for the defendant objected, insisting that he should answer categorically; but the court overruled the objection, remarking: "That in reply to the question, the witness could answer and perhaps naturally would answer, first, categorically, yes or no. On cross-examination you would have a perfect right to ask him the whole of what was said on that occasion, and, if the witness chooses to detail the conversation, let him do so, reserving the right, of course, to strike out any part of the conversation which the court thinks not material."

Counsel for plaintiff also asked the impeaching witness the following specific questions, which, with the answers, are well within the details of the impeaching or warning question propounded to the witness Mann:

"Q. Now, I ask you did he tell you that he saw Mr. Turpin wave to the motorman?

"A. He did.

"Q. Did he tell you that he heard him holler at him?

"A. I don't remember.

"Q. Did he tell you that he told the motorman to stop?

"A. Yes, sir.

"Q. And that he made no effort to stop?

"A. No effort to stop."

We do not perceive that the ruling of the court with reference to the course of examination, which is made the ground of this exception, could possibly have prejudiced the defendants. The foundation or warning questions as to subject matter were quite as broad as the impeaching questions. They fully apprised the witness of the alleged contradictory and inconsistent statements attributed to him and the circumstances under which they were alleged to have been made.

The essentials of a foundation question are thus given in Wigmore on Evidence, sec. 1029: "If the preliminary question is to be useful as a warning to enable the witness to prepare to disprove the utterance or explain it away, if admitted, it must usually specify some details as to the occasion of the remark. The witness may, perhaps, without this, understand the occasion alluded to, but usually he will not, and in such case this specification of the details is a mere dictate of justice. The modern tendency of American courts, however, is to lose sight of the fact that this specification is a mere means to an end (namely, the end of adequately warning the witness), and to treat it as an inherent requisite, whether the witness really understood the allusion or not."

This obviously just rule is in accordance with the practice in this State. *Unis* v. *Charlton's Admr.,* 12 Gratt. 484; *Gordon* v. *Funkhouser,* 100 Va. 675, 42 S. E. 677.

In this instance there was "substantial identity between the statements narrated in the foundation question and that proposed to be proved for purposes of impeachment," (7 Ency. of Ev., 122) and that satisfies the requirement. It may be the better practice, generally, (as plaintiff in error contends) to require categorical answers from an impeaching witness, since the matter at issue is whether the witness, whose testimony is assailed, did or did not utter the statements attributed to him. But experience teaches the unwisdom and impracticability of attempting to prescribe inflexible rules of practice for the guidance of trial courts. In the nature of things, more or less latitude must be allowed in the trial of cases at *nisi prius*.

It is quite clear in this case that the discretion of the circuit court has not been exercised indiscreetly or to the prejudice of the defendants' rights in the particular referred to.

The remaining assignment of error is to the refusal of the court to set aside the verdict and grant the defendants a new trial because of certain alleged improper remarks made by one of the counsel for the plaintiff in his address to the jury. The record shows that the defendants' counsel made no motion to the court to instruct the jury to disregard the language and took no exception thereto until nine days after verdict, when, for the first time, it was made the ground of a motion for a new trial.

In *Williams* v. *Commonwealth,* 111 Va. 870, 69 S. E. 1031, this court, in an opinion handed down at the January term, 1911, held that "the correct practice is to give notice that a point is intended to be saved at the time the alleged objectionable ruling is made, certainly before verdict, and the bills of exception are usually prepared and signed later. Va. Code, 1904, sec. 4050; 4 Minor (3 ed.), 915; *Winston* v. *Giles,* 27 Gratt. 530, 535; *Page* v. *Clopton,* 30 Gratt. 429;

*Buena Vista Extract Works* v. *Hickman,* 108 Va. 665, 62 S. E. 804."

If, therefore, there was any merit in the assignment, as to which we need express no opinion, the objection comes too late.

For these reasons the judgment must be affirmed.

*Affirmed.*