# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## W. H. HARRISON V. COMMONWEALTH.

January 12, 1933.

Present, All the Justices.

The opinion states the case.

*J. E. Palmer,* for the plaintiff in error.

*John R. Saunders, Attorney-General,* and *Edwin H. Gib-*

son and *Collins Denny, Jr., Assistant Attorneys-General,* for the Commonwealth.

GREGORY, J., delivered the opinion of the court.

Harrison was indicted under section 4402 of the Code, which is commonly called the "maiming" statute. He was tried by a jury, convicted and sentenced to eight years in the penitentiary.

The record presented to this court is so meager and unintelligible that it is difficult to thoroughly understand the case. There are eight assignments of error, founded upon twelve bills of exceptions, numbered one to twelve inclusive, and one "Certificate of Evidence and Exceptions" which bears no number. The twelve bills of exceptions were signed by the trial judge on May 17, 1932, while the "certificate of evidence and exceptions," which embraces the evidence was signed by the judge on June 4, 1932. The record fails to set out the instructions which the court gave the jury.

Section 6252 of the Code provides that "before the court or judge in vacation shall sign any bill of exception so tendered it shall appear in writing that the opposite party or his attorney has had reasonable notice of the time and place at which said bill of exception is to be tendered to the court or judge; * * *."

The record in this case affirmatively shows that the statutory requirement of notice to the "opposite party or his attorney" was not complied with and that the trial judge signed the twelve bills of exceptions without any notice whatever to the "opposite party or his attorney." This disclosure, showing the failure to give the notice, appears from the certificate of the judge which in part is in this language:

"I, * * *, do hereby certify that the defendant, W. H. Harrison certify that notice was duly given by W. H. Harrison, the defendant, to Mr. Carter Lee, attorney for

the Commonwealth of Virginia, on the 14th day of June, 1932, of the date and time, to-wit: May 17, 1932, at 9:30 A. M., thereof, that he the said W. H. Harrison, by his attorney, did present bill of exceptions to the court in said case to be signed and certified by me for the purpose of applying to the Supreme Court of Appeals of Virginia for an appeal from the judgment of the Circuit Court of Franklin County, Virginia." Then follows the signature and seal of the judge.

■■ This certificate shows that the Comonwealth received notice on June 14, 1932, that the judge *had* signed the bills of exception on May 17, 1932. In other words the accused gave the Commonwealth notice, not that he would tender the bills for the signature of the judge, but that he had already presented them and the judge had already signed them. Speaking of the pertinent part of the statute (section 6252) this court said in *Scholz* v. *Standard, etc., Ins. Co.*, 145 Va. 694, 134 S. E. 728, 729, that "the statute is an important one, and compliance with it is necessary to the validity of the bill of exception; * * *. If the notice was not in fact given, the act of signing the bills of exceptions was a nullity and they cannot be considered."

The bills of exceptions, numbers one to twelve, inclusive, being invalid on account of the failure of the accused to give the essential statutory notice to the Commonwealth, the questions presented by them cannot be considered by this court.

■ What has been said regarding bills of exceptions one to twelve inclusive has no application to the "certificate of evidence and exception" because it is sufficient to be treated as a valid bill of exception. The certificate of the trial judge to this exception shows that the attorney for the Commonwealth had reasonable notice. The certificate is as follows:

"All of which, on motion of the defendant, is signed and sealed this the 4th day of June, 1932, and made a

part of the record, and the court doth certify that as to this certificate, and this certificate only, that the attorney for the Commonwealth had reasonable notice of the presentation and signing of this certificate.

"Given under my hand and seal this the 4th day of June, 1932." Then follows the signature and seal of the judge.

All of the testimony was brought into the record under this bill of exception, therefore we are authorized to consider the ruling of the court on the motion to set aside the verdict on the ground that the evidence was insufficient to sustain it. The testimony discloses: That Garnett Hodges, a girl nine years old, who lived about two or three hundred yards from the home of the accused was injured by the explosion of a dynamite trap, which had been set in front of the door of an old chicken house, located close to the dwelling house of the accused.

█ She testified that on the day that she was injured she was playing hide and seek with her little brother and a child of the accused and that they were playing in the woods around the chicken house in question. She thought that one of the children was hiding in the old chicken house, and she went up to it and attempted to open the door and the explosion occurred.

Medical testimony shows that she had one foot practically blown off and was otherwise seriously injured. The foot had to be amputated below the knee.

The accused testified that he had no chickens but that his son did have some, but he did not state that they were kept in the old chicken house. He further testified that he had nothing to do with the placing or setting of the dynamite trap but that he had learned about two weeks before the child was injured that his son had placed it there in order to catch chicken thieves. He also testified that the land on which the chicken house was located had been taken away from him through a deed of trust sale about four months prior to the day the

child was injured and that he had no control over it except the residence located thereon which he occupied under a lease. This statement of the accused is contradicted by the testimony of witness J. B. Allman who was a trustee in the deed of trust which was foreclosed. Allman testified that the accused had control over that part of the premises on which the chicken house was located.

The accused further testified that he knew that young children, including his own, played around the chicken house. There is no evidence that any chickens or any other property was being kept in the old chicken house.

Another witness, Stigmon, testified that on the day the child was injured he asked the accused what caused the child to get hurt and he answered that "he had just forgotten to pull the switch that morning."

Witness Williams testified that two years prior to this occurrence the accused had shown him a dynamite trap set at the same house where the child was injured and had said it was put there to catch chicken thieves.

Another witness, Altice, testified that about six months prior to the time that this little girl was injured that the accused showed him a dynamite trap set at the same chicken house.

Sheriff Prilliman testified that the day following that on which the child was injured he made a thorough examination of the premises and that this old chicken house had been wired with copper insulated wires connected in such a manner with a switch that when the door on the chicken house was opened an electrical circuit, charged with dry batteries, would be made so as to explode the dynamite trap placed just in front of the door and that any person opening the door would be injured. He also stated that there was no lock on the door and no warning that the trap was laid.

The testimony of the witnesses has been set out in detail in order that we may determine whether it is suf-

ficient to sustain the verdict. The question whether or not the accused had control over the land where the chicken house was situated, has been resolved against him by the jury. Witness Allman stated that the accused had control over this land. Accused admitted that he knew that the dynamite trap was laid and that little children, including his own, played around the chicken house. Witness testified that the trap had been laid for a long time and one witness stated that the accused told him that he, the accused, had forgotten to disconnect the switch on the day the child was injured.

The record does not contain the instructions which the court gave the jury, therefore it will be presumed upon this writ of error, that the court correctly instructed the jury upon the law applicable to the evidence.

We think the testimony is sufficient to sustain the verdict of the jury. This being the sole question properly before us, we therefore affirm the judgment of the trial court.

*Affirmed.*